v. Thomas-Morris v. Gell-Mann 14-2149 Douglas Ellmann v. Michael James Baker Argument not to exceed 15 minutes per side. Mr. Morris, you may proceed for the appellant. May it please the Court, Thomas Morris on behalf of the appellant Douglas Ellmann, the bankruptcy trustee. Your Honors, 14 months ago, the Supreme Court in Law v. Siegel ruled in a California bankruptcy case that the trustee could not surcharge exempt property in order to pay expenses of administration in that bankruptcy case. Section 522K of the Bankruptcy Code, in fact, says that property exempted by the debtor is generally not liable for administrative expenses. The Supreme Court decision was announced between the time that the objection to the exemptions in this case was filed and the hearing on the objection that was held by the bankruptcy court. So at the hearing, Law v. Siegel was a central topic of discussion. The trustee distinguished the case at that time on the basis that in Law v. Siegel, the claim of exemption taken by the debtor had not been amended. The debtor wasn't seeking to amend the claim of exemption. So Bankruptcy Rule 1009, which governs a debtor's amendment of schedules, including a schedule in which an exemption is claimed, was not applicable. In our case here, Rule 1009 is applicable, and it says that a claim of exemption may be amended as a matter of course at any time before the case is closed. This case was closed in 2009. It had been closed for several years until it was reopened in 2013. So the trustee says that this rule means that after the bankruptcy case has been closed, a debtor can only amend a claim of exemptions if the bankruptcy court allows that amendment. And the case law says that the debtor does not have an absolute right to the allowance of an amendment after the case has been closed. Before the case is closed, the debtor may amend a claim of exemptions as a matter of course, and that language comes from Rule 15 of the Federal Rules of Procedure, which allow amendments in certain circumstances as a matter of course. The bankruptcy court interpreted Rule 1009 as allowing an amendment of a claim of exemptions as a matter of course at any time that the case is open. What this would mean in practice is that a claim of exemptions could be amended at any time, whether or not the case had already been closed, so long as the case is reopened for that purpose. And reopening a bankruptcy case is routine. They're open for a variety of different purposes. The district court, when we appealed to the district court for the bankruptcy court's ruling, the district court disagreed with the bankruptcy court on this point, and for good reason. Rule 1009 places a procedural limit on an amendment to a claim of exemptions. It places a deadline on that amendment. This is unremarkable because the court rules contain many time limits and deadlines. Clearly, the United States Supreme Court has the authority to adopt court rules. Rule 1009 was part of the bankruptcy rules adopted by the U.S. Supreme Court and not rejected by Congress, so it is the law. Counsel, I don't quite understand why in policy there should be, or under the Bankruptcy Act, there should be a difference between what happens when a case is open and what happens when a case is reopened. The reason for that difference, well, first of all, there's a variety of consequences to the closing of a case. It results in deadlines for a number of things. It results in a number of things occurring. At the closing of a case, all the property of the estate is abandoned. It's no longer property of the estate. There is no more estate. The property reverts back to whoever owned it prior to the bankruptcy, such as the debtor. The closing of the case triggers a deadline for the trustee to seek to revoke the discharge. A discharge can be revoked on rather limited grounds within a year after the closing of the case. I understand that there are consequences for closing a case, but where it's reopened, what would be the reason that none of those things appear to be relevant to the question here, what happens when a case is closed. My problem is I don't see why it should make a difference if the case is closed and then reopened. Well, from the standpoint of someone who seeks to amend his exemptions, it's hard to see why there should be a deadline. Just like a plaintiff who files his complaint a day late or a year late doesn't want to accept that it's late. There are simply deadlines for a variety of actions in the bankruptcy case. The Supreme Court, in adopting the rules, has imposed these deadlines, has decided upon these deadlines. Of course, every lawyer and judge knows how many deadlines there are in governing civil litigation and governing bankruptcy cases. This is just another deadline. Is it particularly special? I don't think so, but it's a deadline nonetheless. The policy behind it is finality because the trustee who is administering the estate needs to know who owns what, who gets what property, who gets what amount. If exemptions could be amended at any time, whether or not the case is closed, I think there would be practical problems that result because of the lack of finality to the choices made by the debtor and the choices made by other participants in the case. Isn't that an issue that ought to be addressed either through the rules or through the statute? Not through our trying to figure out what the current rules and statutes, how they weigh on this? I think it should be addressed by the rules and it is addressed by the rules. Rule 1009 says that a claim of exemptions can be amended at any time before the case is closed, as a matter of course. In other words, you don't need to seek leave. The Supreme Court ruling in Law v. Siegel is interpreted by a number of people as meaning that before the case is closed, as a matter of course, means that there's not a basis for an objection by a trustee that there's some impropriety with respect to the exemption, something other than a substantive objection. That the debtor claimed it too late, that the debtor claimed the exemption in bad faith or something like that. But the rule says that this unequivocal right to claim an exemption or to amend an exemption expires when the case is closed. And that's the situation in this case. Mr. Morris, this is Judge Cole. So there's this other rule that I think both the bankruptcy and district courts cite, this rule 4003, that requires a timely objection to be made here as to rule 1009. And the argument that the courts have made is that the trustee did not meet that requirement and that Siegel, even though it's an intervening decision, did not change the lay of the land. He could have made that objection before, he could have made it after Siegel. So how do you respond? I respond to that the trustee very much met that deadline. The deadline under rule 4003 is 30 days, and the trustee met that deadline. The district court found that, did not like the way that the trustee worded his objection to the exemption. And said that now, given law versus Siegel, there would be a better way of phrasing your objection. We believe that that's improper. The trustee, if the court felt that an amendment to the objection was required, then the trustee should have been granted leave to amend his objection. And that amendment would relate back, and there wouldn't be any problem with the 30-day deadline. There wouldn't be a jurisdictional problem, as the district court found. The district court went down this path of first, I think incorrectly, determining that the trustee's objection was somehow deficient. And then the district court imposed consequences, substantive consequences, based upon that determination. There's no case I could find where a litigant has been denied the right to amend a pleading if the law is changed between the time that the pleading was filed and the time of the change in the law. I cited cases where, in fact, an objection to an exemption was allowed to be amended, and it related back under Rule 15. Thank you. Judge Cole, your initial time has expired. I understand you've asked to reserve five minutes for rebuttal? Yes. Okay. Thank you. Thank you. We'll hear next from Ms. Coleman. Beatrice Coleman on behalf of the debtors, Your Honor. Okay. You may proceed. Once the debtors' bankruptcy case was reopened, the debtors quickly amended their schedules to claim their exemptions with regard to the settlement between the trustee and Orleans. The trustee objected to those claims, citing then-prevailing case law, which at that point did permit bankruptcy courts to deny debtors exemptions based on such considerations as bad faith concealment of assets, latches, prejudice, and the like. To be clear, at no time did the trustee cite any specific statute in the code in support of his objection, nor does any exist in our case. At the hearing that was held on April 2, 2014, Judge Tucker held that the case law relied on by the trustee was now overruled by the opinion of the U.S. Supreme Court in Law v. Siegel, and he stated, but my view of the passage in Law v. Siegel is that, indeed, it does change the law drastically, and it does eliminate its sub salientio overruled cases like Lucia's and McLemore and the like. He went on to say that the court can only deny the debtors' right to exempt that property in a situation if there was some particular provision in the bankruptcy code. At that same hearing, due to the newly issued Law v. Siegel opinion, the trustee for the first time asserted that Rule 1009A did not apply to a case which was previously closed, as in our case. It states that a debtor may amend a schedule or claim exemption as a matter of course any time prior to the closing of the case. And he argued for the first time that debtors did not have such a right since their case was previously closed. In response, Judge Tucker held, first and foremost, that the trustee had not asserted this argument in this brief, and therefore waived it. Debtors agree with that position. That argument was available to the trustee long before Law v. Siegel made its appearance, and the fact that the trustee failed to anticipate the Law v. Siegel ruling is unfortunate for him. But he clearly had the Rule 1009A argument at his disposal prior to Law v. Siegel. He should not now be allowed to assert that he should be excused because he chose to place all his eggs in one basket. Now under Rule 1009A... Counsel, Judge Merritt has a question. Judge Merritt has a question. Ms. Coleman? Ms. Coleman? Judge has a question. Ms. Coleman, is Judge Merritt has a question? Yes. My question is on the Rule 1009 point. What is your argument on Rule 1009 if we do not think the waiver is correct? Do you have an argument on Rule 1009 on the merits that... Your Honor, if Rule 1009A was intended to bar a debtor's right to amend as a matter of course, then would the drafters not have indicated that? Would they not have stated in the case, this does not apply to reopened cases, or this applies only for first-time closed cases? It seems to me, Your Honor, that the language is quite clear. It says that once you open a case, you have this right until it's closed. This case was reopened, it's an opened case, and it will have to close at some time. Thus, my clients submitted their claimed exemptions properly before this case was closed. It has not been closed yet, Your Honor. So you don't really need the waiver under your argument on interpretation of Rule 1009. It doesn't permit what the trustee wants to do. That's correct, Your Honor. Okay, thank you. Plus, the duty to disclose requires them to amend, Your Honor. May I proceed? Yes, you may. Again, there's no known case law to the contrary. And the trustee even acknowledged, he said, I am aware of situations where debtors have been allowed to amend their exemptions with the reopening of a case. But that's not really precedence. I'm aware of that practice. It has happened that a trustee has not objected, but that doesn't really mean anything. Well, in summary, Your Honors, the trustee's Rule 1009A argument is without case law support and is, in fact, contradicted by existing bankruptcy practice. And more importantly, the trustee weighed that argument when he failed to assert it within the 30-day deadline. Are we addressing the Law v. Siegel argument as well, or are we just focused on the 1009A argument at this point? You may proceed and address Law v. Siegel if you wish. Okay. 11 U.S.C. Section 522b1 allows a debtor to exempt certain assets. And in Siegel, the question was, May a debtor exempt assets to be used to pay for administrative expenses incurred as a result of a debtor's misconduct? Citing 11 U.S.C. Section 105a, the Supreme Court in Siegel noted that the bankruptcy court has authority to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code and may also possess inherent powers to sanction abusive litigation practices. However, the Supreme Court in Siegel also noted that a court may not contravene a specific statutory provision in exercising those statutory and inherent powers. The Supreme Court then concluded that the surcharge in question did contravene a specific statutory provision of the Code, and that was Section 522k. The Siegel trustee argued that 522 establishes the procedure by which a debtor may claim an exemption but contains no directive requiring a court to allow an exemption, therefore recognizing an equitable power in the bankruptcy court to deny an exemption by surcharging exempt property when there is debtor misconduct. First, the Supreme Court noted that the surcharge was the same as an outright denial of the debtor-named law. Then it noted that Section 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate. The trustee in Siegel argued that because 522 states that a debtor may exempt certain property rather than shall, this means the court retains discretion to grant or deny the exemptions even when the statutory criteria are met. However, the Supreme Court held that the subject of the term may exempt goes to the debtor. That is, it's the debtor in whom the statute vests discretion, not the court. A debtor need not invoke an exemption, the Supreme Court held, but if it does, the court may not refuse to honor the exemption absent a valid statutory basis. The trustee in Siegel then argued that a handful of courts have claimed authority to disallow those exemptions based on fraudulent concealment of assets and the like. However, the Supreme Court responded that the bankruptcy court admits no such power and stated that, for example, in the case of a state-created exemption, the exemption scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption. However, it held that federal law provides no such authority for a bankruptcy court. Counsel, on that point that you just made about state law defining the scope of the exemption, you don't make any argument here that the Homestead Exemption under Michigan law does not include a settlement of this kind, that is, the kind that's taken place in this case. You don't make any state law argument on the scope of the exemption, right? I'm not sure I'm understanding, Your Honor. We did not use the Homestead Exemption. That's not where our exemption lies. I thought that was where it was. I'm confused, then. What is the nature of the exemption? The exemption, as I understand it, Your Honor, is in the funds that were settled between Orleans and the trustee. But what is the basis for that exemption? G-5. Is that the so-called wild-card exemption? Yes, Your Honor. And how does this... Go ahead, Judge Merrick. So this has nothing to do with the Homestead Exemption? No, Your Honor. And so what is the other exemption now? It's the wild-card exemption, and that is $10,000 or something like that? Roughly $10,600, Your Honor. $5,500 for each one of the owners? What's the basis of this exemption? It's statutory, Your Honor. It's the D-5 wild-card exemption. Well, what purpose is it put in the statute? It's used for anything that doesn't have a specific exemption. So you've got a settlement of about $35,000, and you've got an exemption, a reduction of approximately $10,000, and so the remaining balance is about $25,000.  Is that right? That's correct, Your Honor. Now, is any of that likely to go to the creditors, or will it all be subsumed in administrative costs? Well, at the last hearing, the trustee had put in for roughly $49,000 in attorney's fees, Your Honor, and that was reduced. I cannot remember the numbers anymore, but it was roughly $8,000. And from my understanding, Judge Tucker was trying to make sure that a certain percentage of that was going to go to the creditors. Well, but that hasn't been decided, I take it. No. What has been decided is that the figure was cut down from $49,000 to roughly $8,000, if memory serves. Okay. Thank you. Do I have time left? You have about a minute and a half. Okay. Well, I was going to address the Woolner case, which was submitted by Judge Shapiro. I'm not sure that I have enough time to do that, Your Honor. It's up to you. You've got a minute left. Okay. Judge Shapiro denied the exemptions in Woolner and distinguished Law v. Siegel by noting that Siegel involves an already allowed exemption. However, that distinction rings hollow, Your Honors. As the Supreme Court in Siegel points out, Siegel and the United States equated the court's surcharge with an outright denial of Law's Homestead exemption. Thus, the surcharge was just another way of challenging the claimed exemptions. So the issue in Woolner is really no different than ours. The claimed exemptions are being challenged in both cases, and Judge Shapiro's distinction evaporates. Judge Shapiro also allowed the 4003b2 argument long after the fact, and obviously after it was waived, Your Honor. I think it's clear that Judge Shapiro does not like the Siegel result and is trying to make it work somehow. In using 4003b2, he is basically saying that the trustee said enough magic words to equate the fraudulently asserted language of 4003b2. In that case, Your Honor, that argument was waived. I don't know why he ruled that way. Go ahead. No, conclude your thought in 15 seconds or so, if you would, and then we'll hear from Mr. Morris in rebuttal. Okay. Even if 4003b2 were timely asserted as an objective in Woolner, I believe that the fraudulently asserted language addresses exemptions which a debtor is not entitled to in the first place under the bankruptcy code. For example, in our case, the question is, does the bankruptcy provide a debtor to take an exemption in settlement funds received by the trustee? The answer is yes. If the answer were no, then it might be argued that the debtor potentially fraudulently asserted this exemption. But a different question which that rule does not address is, did the debtors act in bad faith in asserting the exemptions they are otherwise entitled to? Segal has clearly held that a debtor's exemption may be denied if such is the case. Okay. Thank you, Ms. Coleman. Your time has expired. Thank you. Mr. Morris, you have five minutes of rebuttal time. Thank you. I wonder, before you start your rebuttal,  and attorney's fees? Is it your understanding that there's about $25,000 or so left that would be available for distribution to creditors? Should the exemption be allowed? Roughly, yeah. I don't remember the exact dollar amounts, but there's roughly, the trustee took in roughly $30,000 in this case. That's what we have to work with. The administrative expenses, the fee application that I submitted to the court exceeded $30,000. Judge Tucker did not allow the fee application in full on an interim basis. It was an interim fee application, not a final fee application. So he only allowed, it was somewhere around $8,000 or $10,000 or $12,000, somewhere in that range. Does that fee application include the services provided in this particular matter in the district court? And I guess you'll have services that you'll be seeking reimbursement of for this matter in the Sixth Circuit as well. It includes this appeal relating to the Law v. Siegel issues and the objection to exemption, and it includes a whole lot more. This case has been interesting, to say the least. One of the main tasks undertaken by my firm was getting approval of the settlement. The trustee reached an agreement to settle with the creditors. The debtors objected to that. The bankruptcy court approved the settlement. The debtors appealed to the district court and lost at the district court level on that issue of approval of the settlement. My recollection is that that was part of the case that required the most time. I'll let you, I know you want to address the substance of rebuttal, but Congress, courts, the public have constantly expressed concern  being eaten up, consumed by administrative expenses, attorneys and other professionals. I guess the concern that I have here is that all or most of this money, this $20,000, seemingly will be consumed by administrative expenses by virtue of this appeal. Not by virtue of this appeal. It will be, if it's to be consumed, well, first of all, that remains to be seen. The bankruptcy court hasn't allowed, given a final allowance of the fees. This case, as I said, most of the time I spent on this case was in a trench warfare battle with the debtors regarding the approval of the settlement. The trustees settled these claims against the mortgage company and an attorney, a law firm that represented the mortgage company, the trustees settled those for $30,000. The debtors claimed that these claims, this cause of action they had asserted, was worth, I think they said $8 million. It was millions of dollars that they claimed. The trustees' position was that the debtors' claims were frivolous. Outright frivolous. But we managed to get the creditors to pay $30,000 to settle these frivolous claims. A nuisance value settlement. Apparently they assessed that the debtors were a lot of nuisance. The debtors had litigated with these creditors for about five years before the case was reopened. Four or five years. Mr. Morris, I hate to interrupt. I mean that's all I have to say. We're getting far afield. That's helpful. Would you take the next three minutes or so and address matters in rebuttal? Yes. I appreciate your response on the other issues. Thank you. Judge Shapiro's decision in Walnut was correct. I won't spend a lot of time on that, but I believe he was correct in distinguishing Law v. Siegel. That's an additional basis for the court to rule in the trustees' favor in this matter. But the main issue here, I think, the importance of the court's decision today, is the question whether it's necessary in a pleading, specifically an objection to exemption here, but in any matter to anticipate a seismic shift in the law that could take place. Law v. Siegel overturned all existing case law regarding the bad faith exception to or bad faith objections to exemptions. It wasn't a split in the circuits. All the circuit courts that have ruled on it were unanimous in favor of recognizing a bad faith issue. Mr. Moore, it's just Cole again. You know, as to issues of bad faith and fraud, things of that nature, are there not other ways? Let's just assume an exemption can be claimed in this way. Aren't there other ways for the court to sanction debtors for bad faith or misconduct without disallowing an amendment? No, because I can't state – I'm not going to say there's no other way. There's no other practical way. I'm not going to state it absolutely. Rather, what you have is a debtor that has perhaps one asset. And the debtor, by definition, has filed bankruptcy probably because the debtor is on hard times and has little. So there's often or usually no way of disciplining the debtor. Or if you want to look at the discipline function of this, there's no other way other than to take away or reduce what the debtor is going to be allowed to receive back from the bankruptcy estate. That's the disciplinary function. There's also the compensatory function, compensating the creditors or the estate because the debtor may have behaved in a way that was prejudicial and cost money to the estate, increased attorney's fees. In this case in particular, Mr. Morris, there has not been any finding by any court of bad faith or misconduct, though. Is that correct? We haven't gotten there yet. It's a factual issue. I think the facts are sufficiently clear that it could be determined on a summary judgment standard, more or less. But we haven't gotten to that. If the court rules in favor of the trustee, it will probably be remanded for factual findings. Okay. Well, let's see if there are any other questions because your rebuttal time has expired. None for me. Okay. I don't think so. Okay. Mr. Morris and Ms. Coleman, we certainly appreciate your arguments today. The case will be submitted and that concludes today's argument. You can hang up at this time.